IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NC12, INC. | § | Case No.: 11-38794 |
| | § | |
| | § | Chapter 11 |
| | § | |
| MICHAEL COLLINS, *et al.* | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| vs. | § | Adversary Case No. 11-03634 |
| | § | |
| MICHAEL SYDOW, *et al.* | § | |
| | § | |
| DEFENDANTS. | § | |

## Plaintiffs/Intervenors' Reply to Defendants' Brief

**************************************************************************
THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.
**************************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

1. Party Plaintiff Intervenors Akila Finance, S.A., Bosques del Molino, S.A., Centrans Energy Services, Inc. Chester Mester Holdings, Ltd., Deltec Bank & Trust, Ltd., Emjo Investments, Ltd., William End, Evans & Petree 401K Plan, First Bay Intertrade, GM Partners, Marair Corporation, W.L. Nichol, IV, Panorama Investment, Ltd., PC 01 Vermoegens Verw., Alejandro Santo Domingo, Sinchi Investment, Venturi Global Investments, Ltd., and H.J. von der Goltz together with Plaintiffs file this brief in support of their direct claims against the controlling shareholders of NC12.

## I. Summary

2. *Hollis v. Hill* is controlling authority. The *Hollis* court treated the claims as direct, allowing a buy-out of the minority's interest in the company—the same relief sought by Plaintiff Intervenors.

3. Defendants' oft-cited *Skyport* case applies Delaware, not Nevada law. Nevada has expressly declined to follow Delaware in shareholder oppression cases. Even if Delaware law were pertinent, Plaintiffs/Intervenors claims are still direct.

4. Derivative and direct claims are separate causes of action that may involve the same bad acts. A direct claim is brought by individual shareholders and seeks remedies from the officers or directors usually in the form of a buyout. A derivative claim is brought on behalf of the corporation and relief is granted to the corporation. Plaintiffs/Intervenors bring claims against directors and seek an equitable remedy in state court—a buyout of their shares at a fair value as determined by the court.

5.  When one shareholder controls the corporate assets, whether that shareholder owns a mathematical majority of the shares becomes irrelevant.

## II. Legal Arguments

### A. *Hollis* controls, but *Skyport* still supports remand.

6.  *Hollis v. Hill* is the only Nevada case that addresses shareholder oppression. 232 F.3d 460, 469 (5th Cir. 2000). *Hollis* is binding authority on this Court. In *Hollis*, the Court treated shareholder oppression as a direct claim, and upheld the buy out of the oppressed shareholder's shares of the corporation. *Id.* at 472.

7.  *Hollis* shows that Nevada would characterize oppression as an inherently direct claim. In Nevada, shareholder oppression depends on the fiduciary duties between minority shareholders and those in control of the company. This duty is different from the fiduciary duty that corporate officers and directors owe to the corporation. Thus *Hollis* conforms with the many jurisdictions recognizing shareholder oppression as an inherently direct claim. *See In re Skyport Global Commnc'ns, Inc.*, No. 08-36737, 2011 WL 111427 at *36 (citing *Masinter v. Webco Co.*, 164 W.Va. 241, 255 (W. Va. 1980)).[1]

8.  Despite clear authority from *Hollis*, Defendants rely heavily on Judge Bohm's recent *Skyport* opinion to support their claims that Plaintiffs/Intervenors' breach

---

[1] In Texas, shareholder oppression is a direct claim. *See Ritchie v. Rupe*, 339 S.W.3d 275, 295 (Tex. App.—Dallas 2011, pet. denied) (stating, in light of the Appellants argument that the business judgment rule protects corporate directors from personal liability in operating the corporation unless the actions are *ultra vires* or tainted by fraud, that the shareholder oppression case before them "is not a derivative suit for breach of care owed to the corporation."); *Redmon v. Griffith*, 202 S.W.3d at 234, 242 (Tex. App.—Tyler 2006, pet. denied) (holding that minority shareholders had standing to sue for shareholder oppression and breach of fiduciary duty by way of shareholder oppression); *see DeBord v. Circle Y of Yoakum, Inc.*, 951 S.W.2d 127, 133 (Tex. App.—Corpus Christi 1997) *rev'd on other grounds sub nom., Stary v. DeBord*, 967 S.W.2d 352 (Tex.1998) (stating that claims of oppressive conduct arising out of fiduciary duties owed by the majority shareholders to the minority shareholders are individual claims of the minority shareholders).

of fiduciary duties and shareholder oppression claims are derivative. In *Skyport*, however, Judge Bohm applies Delaware, not Nevada, law. While *Skyport* does not apply Nevada law, the case implicitly recognizes two important concepts: (1) whether particular facts alleged to constitute oppression is an evidentiary issue of relevance for the state court to decide and (2) an oppression claim, generally, is a direct action so long as at least one allegation shows injury to the shareholder without injury to the corporation. See *Skyport*, 2011 WL 111427 at *70.

9. *Skyport* uses Delaware's *Tooley* test to determine the character of the claims alleged.[2] Despite Defendants arguments that Plaintiffs/Intervenors claims are derivative, in *Skyport* Judge Bohm remands the shareholder oppression claims. *Id.* at *30–33.

10. As in *Skyport*, Plaintiffs/Intervenors assert some facts, such as Defendant Sydow's misappropriation, which could also be part of a derivative action. Still, the *Skyport* court remanded the shareholder oppression claims despite the fact that misappropriation was used to support the pattern of oppressive conduct. *Id.* at *35, 37.[3] Because the *Skyport* plaintiffs also contended that their shares had been "extinguished", which the court considered a direct injury, the plaintiffs could establish oppression without showing any injury to the corporation, and this claim was direct under *Tooley*.

---

[2] *Skyport* sets out the *Tooley* standard as, "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *In re Skyport Global Commc'ns., Inc.*, 08-36737, 2011 WL 111427 at *24 (Bankr. S.D. Tex. Jan. 13, 2011) (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004). While Nevada has not expressly adopted *Tooley*, Plaintiffs/Intervenors claims would still be direct using that test: Plaintiffs/Intervenors suffered the harm and seek recovery on their own behalf, a buyout of their shares.

[3] "The harm the Plaintiffs allege in this oppression claim is not the devaluation of their stock as a result of harms to the company, but rather the extinguishing of their stock pursuant to the Plan as a culmination of the alleged oppressive acts. This harm does not require the demonstration of harm to the company. As a result, this Court concludes that [this] is a direct claim and will therefore be remanded to the Texas state court. *Id.* at *37.

*Id.* at *37. Only one direct allegation was necessary to remand the case. *Id.* Like *Skyport*, Plaintiffs/Intervenors' claims are not based on the directors' misappropriation, the misappropriation is alleged as one piece of the pattern of oppression. Thus, the claims are direct.

11. Here, Defendant Sydow removed independent, non-conspiratorial directors H.J. von der Goltz and Dr. Ayden Muderrisoglu from the NC12 board of directors, depriving them of the right to participate in the management of the company and consequently, the ability to protect the minority shareholders' interets. *See Hollis*, 232 F.3d at 467. This act as part of the pattern of oppression serves as the direct injury to the shareholders, which according to *Skyport*, supports remand of the shareholder oppression claim. *See Skyport*, 2011 WL 111427 at *38.

12. Thus, even if the oppression claims in this case were scrutinized under Judge Bohm's iteration of the *Tooley* test, those claims would still be remanded. Regardless, whether or not the claims are direct under the *Tooley* test is irrelevant to the inquiry in this non-Delaware case. Instead, *Hollis*, as the only case dealing with shareholder oppression in Nevada, must control. Plaintiffs/Intervenors claims are direct in either case and should be remanded.

## B. Bad conduct actionable in derivative claims also constitutes a pattern of oppressive acts.

13. Plaintiffs in a shareholder oppression suit must often allege conduct that may at first blush appear to be a derivative claim. For example, the controlling shareholder may authorize exorbitant bonuses for himself, with nothing left to pay dividends to the minority shareholder. The controlling shareholder could take a

corporate opportunity like the purchase of a building and put it in a company that he owns 100%, avoiding the burden of sharing profits with the minority shareholders. In each case, the controlling shareholder violates duties owed to the corporation and damages the corporation. The minority shareholders could assert a derivative claim on behalf of the corporation that seeks a monetary award of actual damages caused by the breach of the fiduciary duties to the corporation. *See* Douglas K. Moll & Robert A. Ragazzo, *The Law of Closely Held Corporations* § 2-11 (2010 Supp.).

14. The minority shareholder also can point to these bad acts as evidence of a pattern of oppressive conduct: The controlling shareholder has enriched himself at the minority's expense, he has diminished and violated the rights and interests that the minority shareholder has simply by virtue of stock ownership. *See Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App.—Tyler 2006, pet. denied). The bad actor substantially frustrates the reasonable expectations of the minority shareholder. *See Hollis v. Hill*, 232 F.3d 460, 465 n.8 (5th Cir. 2000). This is what Plaintiffs/Intervenors assert. The officers and directors of NC12 have enriched themselves at Plaintiffs/Intervenors' expense. Defendants extinguished the value of Plaintiffs/Intervenors' stock as a culmination of their oppressive acts. *See Skyport*, 2011 WL 111427 at *37.

15. That minority shareholder, may not in his individual capacity sue the controlling shareholder to recover damages the corporation suffered for those bad acts. However, this minority shareholder can point to that same bad conduct as evidence that the controlling shareholder's conduct is evidence of a pattern of oppressive conduct. *Redmon*, 202 S.W.3d at 225.

16. Shareholder oppression is an equitable remedy. *Hollis*, 232 F.3d at 466, 471. When the shareholder proves that a pattern of oppressive conduct has occurred, the shareholder is not necessarily entitled to economic damages that result from that conduct. Instead, the court fashions an equitable remedy that addresses the harm suffered by the minority shareholder and the damage to his rights and interests arising from share ownership. *See id.* at 472. The most common remedy sought, and the one sought by Plaintiff Intervenors, is a judicially ordered buy out of the plaintiff's interests at a fair price as determined by the court. *See id.* at 466.

17. Absolutely nothing is inconsistent about claiming that, as a result of the controlling shareholder's misappropriation of corporate assets, that the corporation, on the one hand, is entitled to an award of actual damages for the amount of the misappropriation and that the minority shareholder on the other hand is entitled to have the wrongdoer buy out the minority's shares. Both can be asserted. Both can even be asserted in the same suit. Plaintiff Intervenors elected not to do that here. The Court should remand these claims and allow Plaintiffs/Intervenors to pursue their claims in the forum they selected.

**C. Control, not share ownership, is the issue.**

18. Defendants find it worthwhile to note that "Plaintiffs allege that they are the majority shareholders of NC12, by a large margin" (Defs. Brief p. 12).

19. Again, *Hollis* provides the necessary guidance. The court observed that "the question of minority versus majority should not focus on mechanical mathematical calculations, but instead, '[t]he question is whether they have the power to work their will on others—and whether they have done so improperly'". 232 F.3d at 466 n.16. The

duty exists because one shareholder controls the corporation's assets. *Id.* at 467 n.21. And actually, Defendant Sydow controls 69% of the voting power of NC12, not Plaintiffs. Plaintiffs Michael and Ellen Collins signed over their voting rights in trust to Sydow some time ago and since then Sydow used that power to vote against their interests. Thus Defendant Sydow exercises the same "virtually unfettered control" that Hill exercised in *Hollis*. *See id.* Plaintiffs may "own" more shares than Sydow, but Sydow commandeered the ship and has called the shots ever since.

## IV. Conclusion

20. Nevada law applies in this case. Neither *Skyport* nor the Delaware *Tooley* case controls. *Hollis v. Hill* is the only Nevada shareholder oppression case and its reasoning applies here. Shareholder oppression cases almost always allege facts that could be part of the corporation's derivative claim, because the controlling shareholders usually engage in self-enriching oppressive conduct. In a shareholder oppression case, however, the shareholders sue on their own behalf rather than on behalf of the company. The remedy sought is a buyout of their shares by the bad actors, here former officers and directors of NC12. That Plaintiffs may technically own a majority of the shares is irrelevant when, as here, Defendant Sydow controls these shares based on a voting trust agreement. Plaintiffs/Intervenors assert direct claims against the former officers and directors of NC12. These claims have no bearing on the bankruptcy and should be remanded to state court where they belong.

Respectfully Submitted,

FRYAR LAW FIRM, P.C.

/s/ Eric Fryar
   F. Eric Fryar
   Texas Bar No. 07495770
   Email: eric@fryarlawfirm.com
   Christina D. Richardson
   Texas Bar No.: 24070495
   Email: crichardson@fryarlawfirm.com
   Matthew M. Buschi
   Texas Bar No.: 24064982
   1001 Texas Ave., Suite 1400
   Houston, Texas 77002-3194
   Tel. (281) 715-6396
   Fax (281) 715-6397
***Attorneys for Intervenors***

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd of March, 2012, a true and correct copy of the above brief has been served by fax and through electronic submission through the Court's automated Case Management and Electronic Docketing System for the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division.

J. Craig Cowgill
Cowgill & Holmes, PLLC
8100 Washington Ave., Ste. 120
Houston, Texas 77007
Fax: 713-956-6284
***Attorneys for Debtors***

Amir Alivi
Todd W. Mensing
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC
3460 One Houston Center
Houston, Texas 77010
Fax: 713-658-0062
***Attorneys for Defendants Michael Sydow, John Preston, C Change Investments, and Brilliant Novelty***

Asher Griffin
Chris Sileo
& Sean Flammer
Scott, Douglass & McConnico, LLP
600 Congress Ave., Ste. 1500
Austin Texas 78701-2589
Fax: 512-474-0731
***Attorneys for Defendants Chalsys, Meloria Energy Technology, and Sonia Lo***

/s/ Eric Fryar
Eric Fryar